OPINION
{¶ 1} The Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, entered judgment on July 18, 2002, committing the minor child, Sasha Johnson, to the permanent custody of Franklin County Children Services ("FCCS") for the purposes of adoption. Both the mother, Karen Jones, and the father, Lance Johnson, have timely appealed the final judgment of the trial court.
 {¶ 2} Sasha Johnson, born February 19, 1999, is the third child born to appellants, Karen Jones and Lance Johnson. Appellants' first two children, Sir and Princess Johnson, were committed to the permanent custody of FCCS prior to the birth of Sasha Johnson, for reasons similar to those alleged in the case of Sasha Johnson. Specifically, the parents were alleged to have a history of substance abuse, domestic violence and mental health issues that created risks for the children.
 {¶ 3} Sasha was removed from her parents' care on October 20, 1999, and placed in the emergency custody of FCCS. Sasha was then placed in a foster home. On December 20, 1999, Sasha was adjudicated a dependent minor and placed under temporary court commitment to FCCS. The court ordered the parents to comply with a case plan that outlined services to remedy the cause for removal of Sasha. The case plan required the parents to complete parenting classes, domestic violence counseling, submit to psychological evaluation and follow any resulting recommendations, complete a drug and alcohol assessment and follow any resulting recommendations, complete random urine screens for drug and alcohol, and to maintain a suitable living facility.
 {¶ 4} FCCS moved for permanent custody of Sasha Johnson on July 26, 2001. The caseworker at that time, Lindsay Quinn, submitted an affidavit in support of the application for permanent custody stating that it is in the best interest of Sasha that parental rights be terminated. She stated that FCCS had prepared a case plan and made a good faith effort to implement that plan. She states that, since the time of temporary commitment, the parents of Sasha have acted in a manner that the child cannot be placed with them within a reasonable period of time or should not be placed with them. She stated that the parents had failed continuously and repeatedly to substantially change the conditions causing the child to be placed outside their home, and that they failed to utilize medical, psychiatric, psychological and other social rehabilitative and material resources made available to them for the purposes of changing parental conduct to allow them to resume and maintain parental duties. She stated that the mother has completed a psychological evaluation but failed to complete a drug and alcohol assessment. She stated that the mother has a mental illness (bipolar disorder/major depression disorder with psychotic features/burden-line functioning/neurotic) so severe that it makes her unable to care for the child at the present time. Karen also stated that the father has failed to complete a court-ordered psychological evaluation and a drug and alcohol assessment.
 {¶ 5} The case was referred to trial before a magistrate of the court where evidence was heard and exhibits received on January 8, 2002 and January 24, 2002. The magistrate entered his decision on March 4, 2002, stating findings of fact and conclusions of law, concluding with the order that Sasha Johnson be committed to the permanent custody of FCCS, it being in the best interest of the child to permanently terminate the parental rights of Karen Jones and Lance Johnson. He found that the continuation in the child's own home would be contrary to the child's welfare and that reasonable efforts have been made to prevent or eliminate the need of the removal of the child from the child's own home.
 {¶ 6} Timely objections to the magistrate's report were submitted to the trial court, together with a transcript of the proceedings and the exhibits admitted into evidence. The trial court analyzed the case history and findings of the referee both as to facts and law, and overruled all of the parents' objections, concluding that the requirements for obtaining a motion for permanent custody were fulfilled.
 {¶ 7} The same objections submitted to the trial court are presented to this court in the separate appeals of Karen Jones, mother, and Lance Johnson, father.
 {¶ 8} Karen Jones submits the following assignments of error:
 {¶ 9} "I. The trial court erred in granting the Motion for Permanent Custody filed by Franklin County Children Services concerning Sasha Johnson.
 {¶ 10} "II. The trial court erred in granting the motion for permanent custody, since Mother Karen Jones had substantially complied with requirements of the case plan.
 {¶ 11} "III. The trial court erred in granting the motion for permanent custody, since Franklin County Children Services had not established by clear and convincing evidence that (1) it was in the best interest of the child that permanent custody be granted, and (2) that the child could not be placed by either parent within a reasonable amount of time."
 {¶ 12} The assignments of error are interrelated and combined for discussion.
 {¶ 13} R.C. 2151.414 provides that a court may grant permanent custody of a child if the court determines by clear and convincing evidence that: (1) it is in the best interest of the child to grant permanent custody; (2) the child has been placed in the temporary custody of one or more public children services agency for 12 or more months out of the past 22-month period; and (3) the child cannot be placed with either parent within a reasonable amount of time. R.C. 2151.414(B). The only one of those requirements that is in issue is whether the child can be placed with either parent within a reasonable amount of time. Both appellants seek a continuation of temporary custody only.
 {¶ 14} R.C. 2151.414(D) provides that the court shall consider all relevant factors, including the interaction of the child with the parents in determining whether a child could be placed with a parent within a reasonable amount of time. It further provides that, if one of 16 specifically enumerated statutory conditions exist, the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." R.C.2151.414(E). The relevant factor in entering the finding is whether the parents, following placement of the child outside the home, have "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C.2151.414(E)(1). In determining this issue, the court shall consider "parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1). In summary, the proper examination is whether the appellants have substantially complied with the reunification case plan.
 {¶ 15} The trial court found that there was clear and convincing evidence that the parents had not substantially complied with the reunification plan. As to the mother, Karen Jones, the factors which caused the removal of the child from her home which were incorporated into the reunification plan were that she possessed poor parenting skills, she had a medical and psychological problem that needed to be addressed, and that there was potentially a substance abuse problem. There was also a problem with parental conflict, both verbally and physically.
 {¶ 16} As to parenting classes, Karen Jones generally attended the classes and did complete classes, but the observation of the social worker was that her parenting skills had not substantially improved. Clearly, taking classes is not the object — the object is improvement of parenting skills which, according to the evidence of FCCS, did not improve substantially. As to Karen Jones' medical condition, she had been diagnosed with a bipolar condition for which medication was prescribed. Jones had decided to discontinue taking her medication feeling that it did not help and that she did not need it. In fact, in this problem, as with all of the other problems, she denies that there is a problem. While she also denied that there was any substance abuse problem, as admittedly there was in the past, she repeatedly failed to submit to tests that were randomly ordered, with excuses for her failure to do so. The mother and father continued living together as parents, but the relationship between them was not addressed, primarily because the father refused to cooperate with any counseling feeling that it was not necessary. While there is no current evidence of physical abuse, verbal abuse seems to continue without improvement.
 {¶ 17} As far as the best interest of the child is concerned, the choice is whether there should be a continuance of the temporary custody to give the parents more time (which is not something that appears to be promising in the near future) or to place permanent custody with FCCS to find an adoptive family. Given the undesirability of too lengthy a time with foster parents, the better choice was found to be permanently severing the ties between the mother and her child now.
 {¶ 18} Lance Johnson asserts the following assignment of error:
 {¶ 19} "The trial court decision to grant permanent custody to the agency was against the manifest weight of the evidence."
 {¶ 20} Much of the response to this assignment of error is contained in the discussion of the assignments of error of Karen Jones. However, specifically referring to Lance Johnson, we find that, after the second enrollment, he completed a parenting class like Karen. The observation of the caseworker from admittedly limited times was an inability to apply the skills taught in the classes. At the periods of visitation according to the evidence, Lance appeared more interested in arguing with the caseworker about what was required rather than developing a relationship with his child. There was testimony that the parents acted inappropriately with each other during visits by fighting and swearing. Initially, after Sasha's removal, Johnson threatened to shoot everyone in the building and blow it up. Johnson cancelled or did not show up for several of his visitation appointments, but his attendance has been fair in more recent times. Johnson has yet to complete the domestic violence class; he is currently enrolled in a class but was terminated from the program on two previous occasions because of too many absences. Johnson has completed only one urine screen out of the three or four he acknowledged receiving, although the caseworker's recollections were more requested screens than that. Both Johnson and Jones have failed to complete the required drug and alcohol assessment. They were scheduled for their assessment in November 1999, and neither of them appeared. Subsequent referrals were made and neither parent completed the assessment. Thus, the caseworker was unable to determine whether the parents were free from drugs and alcohol. In short, both parents had ample time and opportunity to attend a drug and alcohol assessment, to complete the urine screens given to them, for Lance Johnson to complete a domestic violence class, and for Karen Jones to comply with the recommendations of her psychological evaluation, and neither did so.
 {¶ 21} There was no evidence of a strong bond between the child and her parents, except the parents' own self-serving statements.
 {¶ 22} The guardian of Sasha Johnson supports permanent custody of FCCS as in his ward's best interest.
 {¶ 23} All assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE, P.J., and BROWN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.